IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS KLINGER, JR., | ) | CASE NO. 4:11CV2299 |
| Individually, and as the Administrator | ) | |
| of the Estate of Dennis Klinger, Sr., | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| CORRECTIONS CORPORATION | ) | |
| OF AMERICA, INC., et al., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |

Dennis Klinger, Sr. ("Klinger") died while a federal prisoner.  Klinger had Crohn's

disease.   In this case, Klinger's son, who is the administrator of his estate, brings claims relating

to his death and the medical care he received while in custody against Corrections Corporation of

American, Inc. and one of its prison wardens, Joseph Gunja (collectively, "CCA Defendants"),

and against the United States of America.  The case is now before the Court[1] on Defendant

United States of America's Motion to Dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the

Federal Rules of Civil Procedure, which was filed on October 17, 2012.  ECF Doc. 71.  Also

before the Court is CCA Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), which was

filed on October 17, 2012.  ECF Doc. 72.  Both motions have been fully briefed and are ripe for

determination.

For the reasons set forth below, the United States' Motion to Dismiss should be

GRANTED; Count 2 of Plaintiff's Fourth Amended Complaint should be dismissed with

prejudice to the extent it purports to state a constitutional tort claim and without prejudice to the

extent it purports to state a claim for medical malpractice; and Count 3 should be dismissed with

---

[1] On December 29, 2011, this case was referred to the undersigned Magistrate Judge for general pretrial supervision, including the preparation of reports and recommendations on dispositive motions.  ECF Doc. 9.

prejudice.  CCA Defendants' Motion to Dismiss should be DENIED without prejudice; however, upon dismissal of Plaintiff's claims against the United States, the Court should decline to exercise supplemental jurisdiction over Plaintiff's claims against CCA defendants, which are state law claims, and should dismiss those claims without prejudice.

## I. Facts

### A.  Background

Klinger was arrested on June 12, 2007, by agents of the U.S. Immigration and Customs Enforcement as a result of a federal investigation into the sexual exploitation of children.  *United States v. Klinger*, No. 1:07-cr-00385 (N.D. Ohio), Affidavit in Support of Criminal Complaint, ECF Doc. 1-1.[2]  He was charged with attempted receipt, "by mail, of three DVDs containing visual depictions of minors engaged in sexually explicit conduct as defined by 18 U.S.C § 2256(2), in violation of 18 U.S.C. § 2252(a)(2)."  *United States v. Klinger,* No. 1:07-cr-00385 (N.D. Ohio)*,* Criminal Complaint, ECF Doc. 1.  After his arrest, on or about June 13, 2007, Klinger was moved to the Northeast Ohio Correctional Center ("NEOCC") in Youngstown, Ohio, which is privately owned and operated by CCA.  Fourth Amended Complaint, ECF Doc. 63, at ¶¶ 1-2.  At all relevant times, Defendant Joseph Gunja was employed by CCA as Warden of NEOCC.  *Id.* at ¶ 9.

On September 5, 2007, Klinger executed a plea agreement and entered guilty pleas to one count of attempted receipt of a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  *United States v. Klinger,* No. 1:07-cr-00385 (N.D. Ohio), ECF Doc. 33, Plea Agreement.  On November 30, 2007, the Court sentenced Klinger to

---

[2] The undersigned takes judicial notice of the documents filed in Klinger's criminal case, *United States v. Klinger*, No. 1:07-cr-00385 (N.D. Ohio), as well as the facts contained in such documents.

15 years in prison and recommended that he be designated to serve his sentence at the Butner

Federal Correctional Complex in North Carolina ("FCC-Butner") and/or another facility capable

of addressing Klinger's ongoing medical issues, i.e., Crohn's disease.  *United States v. Klinger,*

No. 1:07-cr-00385 (N.D. Ohio), ECF Doc. 43, Judgment Entry, at p. 2.

Klinger was detained at NEOCC from June 13, 2007, until approximately March 15,

2008, when he was transferred to FCC-Butner.  Fourth Amended Complaint, ECF Doc. 29, at ¶¶

2, 27.  Klinger died while in federal custody at FCC-Butner on October 29, 2009.  *Id.* at ¶¶ 2, 31.

## B.     Procedural History

On October 26, 2011, Plaintiff brought this action against CCA, Warden Gunja, and the

United States of America/Federal Bureau of Prisons asserting various claims based on the

underlying allegation that Defendants denied Klinger appropriate medical care, i.e., a medically

appropriate diet and intravenous Remicade infusions, while he was confined at both NEOCC and

FCC-Butner, and that conduct proximately caused his death.  ECF Doc. 1.  On October 2, 2012,

Plaintiff filed his Fourth Amended Complaint with leave of Court.[3]  ECF Doc. 63.  In his Fourth

Amended Complaint, Plaintiff asserts the following four claims:

> Count 1:  Wrongful Death,[4] against CCA Defendants;
>
> Count 2:  Tortious Conduct under the Federal Tort Claims Act ("FTCA"),[5] against
> the United States of America: Federal Bureau of Prisons;
>
> Count 3:  Violations of the Freedom of Information Act ("FOIA"),[6]  against the
> United States of America: Federal Bureau of Prisons; and

---

[3]  According to the Fourth Amended Complaint, federal jurisdiction is based upon 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 552 *et seq.* (FOIA), and 28 U.S.C. §§ 1346(b), 2671-2680 (FTCA).

[4] This is a state law claim brought under the Ohio wrongful death statute, Ohio Rev. Code § 2125.01.

[5] 28 U.S.C. §§ 1346(b) and 2671, *et seq.*

[6] 5 U.S.C. § 552 *et seq.*

Count 4:  Intentional Infliction of Emotional Distress ("IIED"),[7] against CCA
Defendants.

ECF Doc. 63, pp. 10-15.

On October 17, 2012, the United States and CCA Defendants filed separate Motions to
Dismiss Plaintiff's Fourth Amended Complaint.  ECF Docs. 71 and 72.   On November 19,
2012, Plaintiff filed Memoranda of Points and Authorities contra the respective Motions to
Dismiss.  ECF Docs. 86 and 88.  On November 30, 2012, the United States and CCA Defendants
filed Reply Briefs in support of their respective Motions to Dismiss.  ECF Docs. 94 and 95.

## II.  Standard of Review

### A.        Rule 12(b)(1)

In cases where a defendant raises the issue of lack of subject matter jurisdiction under

Fed.R.Civ.P. 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive a

motion to dismiss.  *Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir.*

*1990)*; *see also DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004)*.  "A court lacking

jurisdiction cannot render judgment but must dismiss the case at any stage of the proceedings in

which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light, Co., 495*

*F.2d 906, 909 (10th Cir.1974)*; *see also Kusens v. Pascal Co., 448 F.3d 349, 359 (6th Cir. 2006)*

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories:

facial attacks and factual attacks.  *United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)*.  A

facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a

basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as

true.  *Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)*; *Smith v.*

*Encore Credit Corp., 623 F.Supp.2d 910, 914 (N.D. Ohio 2008)*.  A factual attack is a challenge

---

[7] Plaintiff's IIED claim is an Ohio common law claim.

to the factual existence of subject matter jurisdiction.  No presumptive truthfulness applies to the factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  *See Ritchie*, 15 F.3d at 598; *Moir*, 895 F.2d at 269; *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996).

**B.      Rule 12(b)(6)**

Fed.R.Civ.P. 12(b)(6) is employed to test the legal sufficiency of a claim and dismissal is appropriate where the pleading itself makes it clear that no relief may be granted.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (clarifying the plausibility standard articulated in *Twombly* ).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The factual allegations of a pleading must be enough to raise a right to relief above the speculative level. *Id.* at 555.  The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id.*  "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65.

In ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may

take judicial notice.  *Whittiker v. Deutsche Bank Nat'l Trust Co., 605 F.Supp.2d 914, 924–25 (N.D. Ohio 2009).*

### III.  Defendant United States of America's Motion to Dismiss

Defendant United States seeks dismissal of Counts 2 and 3 of Plaintiff's Fourth Amended Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF Doc. 71.  The United States contends that Plaintiffs FTCA claim in Count 2 should be dismissed because sovereign immunity bars Plaintiff from pursuing constitutional tort claims against the United States and/or the Federal Bureau of Prisons ("BOP").  The United States also argues that, to the extent that Plaintiff is asserting a medical malpractice claim in Count 2 regarding the care and treatment that Klinger received at FCC-Butner, the claim should be dismissed because Plaintiff has failed to provide a certification of merit as required by Rule 9(j) of the North Carolina Rules of Civil Procedure.[8]  Doc. 71, pp. 3; Doc. 94, p. 2.  With respect to Count 3, the United States asserts that Plaintiff's FOIA claim should be dismissed because the claim is moot and because Plaintiff has failed to exhaust administrative remedies.  Doc. 71, p. 11.  Each argument will be addressed in turn.

### A.  Count 2 – Plaintiff's FTCA Claim

#### 1.  Sovereign Immunity Bars Plaintiff's Constitutional Tort Claim against the United States of America or the Federal Bureau of Prisons

Upon review of Count 2 of the fourth amended complaint, it is unclear what claim Plaintiff is actually asserting against the United States under the FTCA.  In its Motion to Dismiss, the United States construes Plaintiff's claim as one sounding in medical malpractice

---

[8] The United States further argues that Plaintiff's FTCA claim should be dismissed because he failed to exhaust his administrative remedies before filing this lawsuit.  ECF Doc. 71, p. 8.  Even though Plaintiff has since exhausted his administrative remedies, the United States contends that Plaintiff cannot correct the premature filing of his FTCA claim by amending the complaint but, instead, that he must dismiss this claim and re-file it.  The Court will not address this argument because Plaintiff's FTCA claim should be dismissed based on the other arguments made by the United States.

and contends that such a claim must be dismissed because Plaintiff failed to submit a certification of merit with his complaint, as required by Rule 9(j) of the North Carolina Rules of Civil Procedure.  ECF Doc. 71, p. 3.  Plaintiff responds that the United States has misclassified Count 2 as a medical malpractice claim.  Plaintiff then expressly states that his claim under the FTCA is not a medical malpractice claim but, rather, a claim against the United States for "wrongful death by constitutional violation."  ECF Doc. 86, p. 1.  Plaintiff argues that Count 2 is based entirely upon the BOP's alleged deliberate indifference to Klinger's severe medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  *Id.* at pp. 1, 4-5.  In its Reply, the United States takes Plaintiff at his word as to the nature of his claim and argues that the claim should be dismissed because sovereign immunity bars constitutional tort claims against the United States.  Doc. 94, pp. 1-5.

To the extent that Plaintiff has asserted a constitutional tort claim under the FTCA against the United States and/or the BOP, such claim must be dismissed for lack of subject matter jurisdiction.  "The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit."  *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997).  Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994) (citing *Loeffler v. Frank,* 486 U.S. 549, 554, 108 S.Ct. 1965, 1968, 100 L.Ed.2d 549 (1988); *Federal Housing Administration v. Burr,* 309 U.S. 242, 244, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)).  Thus, unless the United States expressly waives sovereign immunity, courts have no subject matter jurisdiction over the action.  *Meyer*, 510 U.S. at 475.  In addition, there can be no consent by implication; a waiver must be express and unequivocal.  *Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002); *Lane v. Pena*, 518 U.S. 187, 192

7

(1996); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 20 (1926) (Congress alone has the power to waive or qualify the sovereign immunity of the United States).

The FTCA provides a limited waiver of the sovereign immunity of the United States with respect to tort claims.  28 U.S.C. § 1346(b); *Singleton v. United States*, 277 F.3d 864, 872 (6th Cir.  2002). This waiver applies to claims that are: "[1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  *Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)).  The FTCA does not create a cause of action against the United States; it merely constitutes consent to be sued to the extent that state law would impose liability on a "private individual in similar circumstances." *Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994).

While the FTCA constitutes a limited waiver of sovereign immunity for the negligence of government employees, the United States has not explicitly waived sovereign immunity for constitutional torts.  *Meyer*, 510 U.S. at 477–78; *Jackson v. United States*, 114 F.3d 1187, 1997 WL 321123 at *2 (6th Cir. June 11, 1997) (Table) ("Although the United States has consented to suit under the FTCA, that Act is inapplicable to Jackson because it does not reach alleged due process and other federal constitutional torts."); *Spotts v. United States*, 613 F.3d 559, 565, n.3 (5th Cir. 2010).  As explained by the Supreme Court in *Meyer*:

> A claim comes within this jurisdictional grant -- and thus is "cognizable" under § 1346(b) -- if it is actionable under § 1346(b). And a claim is actionable under § 1346(b) if it alleges the six elements outlined above.
>
> Applying these principles to this case, we conclude that Meyer's constitutional tort claim is not "cognizable" under § 1346(b) because it is not actionable under §

> 1346(b)-that is, § 1346(b) does not provide a cause of action for such a claim.  As noted above, to be actionable under § 1346(b), a claim must allege, inter alia, that the United States "would be liable to the claimant" as "a private person" "in accordance with the law of the place where the act or omission occurred."  A constitutional tort claim such as Meyer's could not contain such an allegation.  Indeed, we have consistently held that § 1346(b)'s reference to the "law of the place" means law of the State - the source of substantive liability under the FTCA.  By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.  To use the terminology of *Richards*, the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.

*Meyer*, 510 U.S. at 477–78 (internal citations and footnotes omitted).  *See also Russ v. United States*, 62 F.3d 201, 204 (7th Cir. 1995) ("Because the 'law of the place' refers to state law, and state law cannot provide liability for the violation of a federal constitutional right, constitutional wrongs cannot be remedied through the FTCA.").

Based on *Meyer*, numerous courts have concluded that constitutional tort claims are not cognizable under the FTCA.  In *Spotts*, for example, the Fifth Circuit Court of Appeals stated:

> The plaintiffs also brought a claim under the FTCA for an Eighth Amendment violation as a 'constitutional tort.' Constitutional torts, of course, do not provide a proper predicate for an FTCA claim. *FDIC v. Meyer*, 510 U.S. 471, 478, (1994) (holding that a plaintiff's FTCA claim must be based on a state law tort and cannot be based on a federal constitutional or statutory claim against the Government).

*Spotts*, 613 F.3d at 565, n.3.  *See also Washington v. Drug Enforcement Admin*, 183 F.3d 868, 874 (8th Cir.1999) ("[C]onstitutional tort claims are not cognizable under the FTCA");

*Hessbrook v. Lennon*, 777 F.2d 999, 1002 (5th Cir.1985) ( "[B]roadly speaking, the FTCA provides a waiver of the sovereign immunity of the United States for negligence actions, but not for certain intentional torts, which, if they violated a constitutional right, would often be actionable instead by a *Bivens*-type suit"); *Kennedy v. Mendez*, No. 3:03–CV–1366, 2004 WL 2301917, * 5 (M.D. Pa., January 15, 2004) (recommending that the plaintiff's constitutional claims against the United States be dismissed because they are not cognizable under the FTCA).

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that a victim of a constitutional violation by a federal official has a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.[9] *Id.* at 396–97; *Yeager v. Gen. Motors Corp.,* 265 F.3d 389, 398 (6th Cir. 2001) (A *Bivens* action is a judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors).  However, in *Meyer,* the Supreme Court refused to extend *Bivens* to authorize suits against federal *agencies,* holding that the logic of *Bivens,* which approved suits against federal *agents* in part *because of* the lack of a remedy against federal agencies, did not support such an extension.  *Meyer,* 510 U.S. at 483-86.

In this case, Plaintiff's claim against the United States under the FTCA alleges a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  As set forth above, the United States has not waived its sovereign immunity to permit constitutional tort claims such as the one alleged by Plaintiff.  Eighth Amendment claims for damages may be brought only against individual defendants pursuant to *Bivens.*  Plaintiff's Fourth Amended Complaint does not name any individual federal defendants and, in his Memorandum contra the United States' Motion to Dismiss, Plaintiff concedes that he does not seek relief against any individuals.  ECF Doc. 86, p. 6.  Neither *Bivens* nor constitutional tort claims can be brought against the United States or the BOP under the FTCA.  *Meyer,* 510 U.S. at 484-86; *see also Salt Lick Bancorp v. F.D.I.C.,* 187 F. App'x 428, 435 (6th Cir. 2006) (a *Bivens,* or constitutional tort claim, cannot be brought against a federal agency); *Okoro v. Scibana,* 63 F. App'x 182, 184 (6th

---

[9] *Bivens* involved Fourth Amendment rights but its principle was extended to Eighth Amendment claims in *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

Cir. 2003) (constitutional tort claims cannot be brought against federal officials in their official capacity); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (*Bivens* claims may not be brought against the United States).  Accordingly, to the extent that Plaintiff has asserted a constitutional tort claim under the FTCA against the United States and/or the BOP in Count 2 of the Fourth Amended Complaint, the constitutional tort claim should be dismissed with prejudice because it is not cognizable under the FTCA.

      **2.**      **In the Alternative, Plaintiff's Failure to Provide a Certification of Merit Requires Dismissal of his FTCA Claim**

As discussed above, Plaintiff unequivocally states in his Memorandum in opposition to the United States' motion to dismiss that his claim in Count 2 against the United States is not a medical malpractice claim.  Doc. 86, p. 1.  However, a review of Count 2 of the Fourth Amended Complaint shows that it could be construed as a medical malpractice claim.  Plaintiff alleges as follows:

     43.     All of the Defendants in this case had a mandatory duty under the Fifth and Eighth Amendments to the United States Constitution to provide Dennis with <u>adequate medical care</u> while he was in federal custody.

     44.     Nevertheless, the Defendants, while acting within the scope of their employment, with actual knowledge of the severity of Dennis's inflammatory bowel disease, and with actual knowledge of the proper treatment and diet to control this disease, willfully, wantonly, and/or negligently refused to follow the directions of Dennis's treating physicians, and failed to provide Dennis with consistent intravenous treatments of Remicade and a diet low in fat and lactose.

     45.     As Dennis's physicians previously warned, the Defendants' failure to consistently administer Remicade directly caused Dennis to suffer pronounced inflammation throughout his intestines as human TNFa [(tumor necrosis factor-alpha)] went unchecked, proximately causing a severe infection in his bowels which ruptured from his abdomen, resulting in a persistent leakage of fecal matter from his intestines through an infected hole in his mid-section, as well as the loss of a substantial amount of his body weight characterizing an adult failure to thrive, severe and chronic pain and, ultimately, to his premature death.

46.     The Defendants consciously and recklessly disregarded their duty to
provide Dennis with <u>adequate medical care</u> and, as a proximate result,
wrongfully deprived Dennis of his enjoyment of life prior to causing his
untimely death.

ECF Doc. 63 (emphasis supplied).   The allegations regarding the medical care Klinger received

at FCC-Butner and the alleged negligence of the medical staff arguably appear to sound in

medical malpractice.   Thus, notwithstanding Plaintiff's unequivocal assertion that Count 2 is not

a medical malpractice claim, the Court, in an abundance of caution, will consider the

implications if it were to be deemed a medical malpractice claim under the FTCA.

The United States argues that Plaintiff's medical malpractice claim should be dismissed

for failure to include a certification of merit as required by controlling North Carolina law.

When a claim is filed pursuant to the FTCA, the claimant is entitled to the same relief as would

be available to a private plaintiff in the state where the cause of action arose.   28 U.S.C. §§

1346(b)(1) and 2674; *F.D.I.C. v. Meyer*, 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308

(1994) ("we have consistently held that § 1346(b)'s reference to the 'law of the place' means law

of the State -- the source of substantive liability under the FTCA."). Under the FTCA, federal

courts apply the substantive law of the state in which the act or omission giving rise to the action

occurred.   *Vaughn v. U.S.* 134 F.3d 373, 1997 WL 809911, *3 (6th Cir. 1997) ("Therefore, if a

complaint does not state a tort claim under the applicable state's law, there is no jurisdiction to

hear such a claim under the FTCA.").

In this case, the laws of the state of North Carolina control because all of the actions

giving rise to Plaintiff's claims occurred at FCC-Butner, which is located in North Carolina.  "In

North Carolina, a plaintiff's medical malpractice complaint must assert that 'the medical care has

been reviewed by a person who is reasonably expected to qualify as an expert witness' as

required by the North Carolina Rules of Civil Procedure for medical malpractice actions."[10]

*Frazier v. Angel Med. Cntr.*, 308 F. Supp. 2d 671, 676 (M.D.N.C. 2004) (quoting *Moore v. Pitt*

*County Mem'l Hosp.*, p139 F. Supp. 2d 712, 713 (E.D.N.C. 2001)).  In addition, Rule 9(j) of the

North Carolina Rules of Civil Procedure specifically requires a plaintiff's complaint to include a

certification of merit:

> (j)    Medical malpractice. -- Any complaint alleging medical malpractice by a
> health care provider . . . in failing to comply with the applicable standard
> of care . . . shall be dismissed unless:
>
> (1)    The pleading specifically asserts that the medical care and all
> medical records pertaining to the alleged negligence that are
> available to the plaintiff after reasonable inquiry have been
> reviewed by a person who is reasonably expected to qualify as an
> expert witness under Rule 702 of the Rules of Evidence and who is
> willing to testify that the medical care did not comply with the
> applicable standard of care. . . .

Rules Civ. Proc., G.S. § 1A-1, Rule 9(j) (2012).  The failure to include such a certification in the

complaint will result in dismissal.  *Frazier*, 308 F. Supp. 2d at 676-77 (citing *Bass v. Durham*

*County Hosp. Corp.*, 358 N.C. 144, 592 S.E.2d 687 (2004)).  Rule 9(j)'s mandatory expert

review must take place before the filing of the complaint and a plaintiff's failure to comply with

the Rule's mandate is fatal to the case.  *Brown v. Kindred Nursing Centers East, L.L.C.*, 692

S.E.2d 87, 89-92 (2010) (Supreme Court of North Carolina stated that "[a]llowing a plaintiff to

file a medical malpractice complaint and to then wait until after the filing to have the allegations

reviewed by an expert would pervert the purpose of Rule 9(j).").

The certification of merit requirement in Rule 9(j) applies in this case because it is a

substantive rule of North Carolina law.  State substantive law applies to an FTCA claim pursuant

to 28 U.S.C. § 1346(b).  The Sixth Circuit has defined a substantive law as "one that gives rise to

---

[10] In North Caroline, a "medical malpractice action" is defined as a "civil action for damages for personal injury or
death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental,
or other health care by a health care provider." N.C. Gen.Stat. § 90–21.11(2)(a).

'state-created rights and obligations' or is otherwise 'bound up with these rights and obligations in such a way that its application to federal court is required.'" *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 573 (6th Cir. 2008), *cert. denied*, 130 S. Ct. 110 (2009), (quoting *Byrd v. Blue Ridge Rural Elec. Co-op.*, 356 U.S. 525, 535 (1958)).  The Rule 9(j) certification requirement is a substantive rule of North Carolina law and is therefore applicable to FTCA litigation.  *See Flythe v. Davis*, No. 4:10-CV-00126-BO, 2011 WL 1870229, **2-3 (E.D.N.C. May 16, 2011).[11]

Count 2 of the Fourth Amended Complaint satisfies the definition of a claim for medical malpractice under North Carolina law.  Plaintiff alleges that Defendants failed to provide Klinger adequate medical care at BOP's FCC-Butner facilities -- indeed, the alleged inadequacy of that medical care is the very basis for this lawsuit.  BOP's FCC-Butner[12] is a "health care provider" pursuant to North Carolina law.  Indeed, several courts have found that the United States, through FCC-Butner, is a health care provider pursuant to North Carolina law.  *See, e.g., Savage v. United States*, No. 5:10-CT-3169-FL, 2011 WL3664798, at * 2 (E.D.N.C. Aug. 18, 2010) (finding that plaintiff's allegation that medical providers at FMC-Butner failed to properly treat his wrist injury is a medical malpractice action requiring a Rule 9(j) certification); *Alfaro v. United States*, No. 5:09-CT-3073-D, 2011 WL 561320, *5 (E.D.N.C. Feb. 8, 2011) ("The United States, through FMC-Butner, is a 'health care provider' as defined in section 90-21.11."); *Hill v.*

---

[11]  This Court has held that the comparable Ohio medical malpractice certification law applies in FTCA litigation.  *Daniel v. United States*, No. 1:09CV2371, 2010 WL 481267, *3 (N.D. Ohio Feb. 5, 2010).  Although the Sixth Circuit has not decided the issue, the Third, Eighth and Tenth Circuits have also applied state requirements for affidavits or certificates of merit to FTCA cases.  *Cestnik v. Fed. Bureau of Prisons*, 84 F. App'x 51, 54 (10th Cir. 2003) ("When a plaintiff brings suit against the United States under the FTCA, state substantive law applies. We have held Colorado's requirement of this certificate [of merit] to be a substantive, rather than procedural, rule of law. As such, it is applicable to Mr. Cestnik's FTCA claims, even though he is proceeding *pro se*." (internal citations omitted)); *Horne v. United States*, 223 F. App'x 154, 156 (3rd Cir. 2007) (New Jersey law); *Mathison v. United States*, 44 F. App'x 27, 29 (8th Cir. 2002) (Minnesota law).

[12]  The Court takes judicial notice that the BOP's Butner Federal Correctional Complex (FCC-Butner) includes the Federal Medical Center Butner ("FMC-Butner") and the Federal Correctional Institution Butner ("FCI-Butner").

*United States*, No. 5:08-CT-3070-D, 2010 WL 3075495, *14 (E.D.N.C. Aug. 5, 2010) (FCI-Butner is a "health care provider" as defined in section 90-21.11). *See also, Lyons v. United States*, No. 4:03CV244, 2007 WL 4553970, *7-*9 (N.D. Ohio Dec. 19, 2007) (recognizing FMC-Butner as a health care provider for purposes of analyzing North Carolina medical malpractice law.). Thus, the Rule 9(j) requirement applies in this case.

Here, Plaintiff admits that he has provided no certification of merit as required by Rule 9(j). Instead, Plaintiff argues that a certification of merit is not required because, "even though some courts have found that Butner is a medical provider, it should be emphasized that Plaintiff does not sue Butner for violating [Klinger's] constitutional rights, but the Federal Bureau of Prisons itself, which is undeniably an administrative agency within the executive branch of the U.S. government, and not a medical provider." ECF Doc. 86, p 6. Plaintiff's attempt to side-step Rule 9(j)'s certification requirement by arguing that he is not suing FCC-Butner is without merit in light of the case law above and the fact that the United States is the only proper party under the FTCA. 28 U.S.C. §§ 1346(b), 2674, 2679.

Plaintiff also argues that a certification of merit is not necessary for a wrongful death claim under North Carolina law. ECF Doc. 86, p. 7. Although Plaintiff is correct that a wrongful death claim is a separate cause of action from a personal injury claim, the law is clear that, when a wrongful death claim is based upon allegedly inadequate medical care, a certification of merit is required. *See* N.C. Gen. Stat. § 90-21.11 (defining a medical malpractice action as a "civil action for damages for personal injury <u>or death</u> arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider) (emphasis added); *Brown v. Kindred Nursing Ctrs. East, L.L.C.*, 692 S.E.2d 87, 88-89 (N.C. 2010) (applying Rule 9(j) to claims alleging negligence, medical

malpractice and wrongful death); *Fletcher v. University Hosp. of Cleveland,* 120 Ohio St. 3d 167, 168-69 (2008) (requiring an affidavit of merit under corresponding Ohio law).

In sum, Plaintiff was required to comply with Rule 9(j) by doing two things: (1) obtaining pre-suit review of "the medical care and all medical records  pertaining to the alleged negligence …" by a medical expert who, after such review, indicated a willingness to testify in plaintiff's favor ; and (2) providing a certification of merit in the complaint.[13]  Plaintiff did not include a certification of merit either in his original complaint or in any of his four amendments. Accordingly, to the extent that Plaintiff is asserting a medical malpractice claim under the FTCA, the undersigned recommends that such claim be dismissed without prejudice because Plaintiff failed to file a certification of merit as required by Rule 9(j) of the North Carolina Rules of Civil Procedure.

In an apparent last ditch effort to avoid dismissal of his FTCA claim, Plaintiff, in a footnote in his Memorandum in opposition, belatedly requests leave to submit an "Affidavit of Merit" should the Court determine that one is required.  ECF Doc. 86, p. 8 n.2.  The Court interprets this as a request by Plaintiff to amend his complaint yet again, this time to include in it the certification of merit following review by a medical expert that is required by North Carolina law.[14]  This request should be denied.  It is contrary to the case law, which is clear that the medical review required for a certification of merit is to be obtained before the commencement of litigation.  As aptly stated by the Supreme Court of North Carolina in *Brown*, supra, "[a]llowing a plaintiff to file a medical malpractice complaint and to then wait until after the filing to have the allegations reviewed by an expert would pervert the purpose of Rule 9(j)."

---

[13] Rule 9(j), North Carolina Rules of Civil Procedure.

[14]  Plaintiff appears to be confusing North Carolina's requirement of a certification of merit with Ohio's requirement of an affidavit of merit.  See note 15 below.

*Brown* 692 S.E.2d at 88.  Nor do the facts support Plaintiff's request.  Defendants put Plaintiff on notice of the requirement of pre-suit review by a medical expert long ago and Plaintiff had ample opportunity to obtain such a review before filing his various amended complaints.  CCA Defendants moved to dismiss Plaintiff's purported medical malpractice claim after Plaintiff filed his First Amended Complaint and Third Amended Complaint, in part, on the basis that he failed to file an affidavit of merit as required by Ohio law.[15]  Doc. 15, p. 12; Doc. 31, p. 13.  Similarly, the United States filed a motion to dismiss Plaintiff's Third Amended Complaint and raised the specific issue of North Carolina's requirement of a certification of merit.  Doc. 48, p. 5. Plaintiff's choice not to provide a certification of merit with his Fourth Amended Complaint was therefore a deliberate one.  Accordingly, his request to amend his complaint yet again by providing a certification of merit should be denied and Count 2, to the extent it purports to state a claim for medical malpractice, should be dismissed without prejudice.

**D.      Count 3 – Plaintiff's FOIA Claim Should be Denied as Moot**

In Count 3 of his Fourth Amended Complaint, Plaintiff seeks an order requiring the BOP to produce all of the documents he requested in two separate FOIA requests pertaining to Klinger's medical treatment at NEOCC and Butner.  The United States moves to dismiss this claim as moot pursuant to Fed.R.Civ.P. 12(b)(1) based on its assertion that the BOP has produced all of the documents responsive to Plaintiff's FOIA requests.  The United States submits the Declaration of Cornelia Coll, a paralegal specialist at the BOP, in support of this assertion.  ECF Doc. 71, Exhibit C., at ¶¶ 4-6.  Ms. Coll declares that the BOP provided all of the requested documents to Plaintiff over a span of several months, with the last document

---

[15] Rule 10(D)(2) of the Ohio Rules of Civil Procedure requires the filing of an affidavit of merit in any case in which a claim of medical malpractice is made. The affidavit required by Rule 10(D)(2)(a) must contain: "(i)  A  statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint; (ii) A statement that the affiant is familiar with the applicable standard of care; (iii) The opinion of the affiant that the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff." Ohio R. Civ. P. 10(D)(2)(a).

production on September 28, 2012.  In his Memorandum in opposition, Plaintiff notably does not

deny that the BOP has now completed its production of all responsive documents.  He argues

instead that the Court should disregard Ms. Coll's unrebutted Declaration because "a Motion to

Dismiss under Fed. R. 12(b)(6) only tests the sufficiency of the pleadings and the Sixth Circuit

'will not consider or discuss any of the outside materials attached by either party.'"  ECF Doc.

86, p. 13 (quoting *Gunasekera v. Irwin*, 551 F.3d 461, 465 (6th Cir. 2009)).  Thus, Plaintiff

concludes that he should prevail on the Motion to Dismiss because the Court may not look

beyond the allegations of the Fourth Amended Complaint, which aver that, as of the date of its

filing, relevant documents remained outstanding.  ECF Doc. 86, pp. 3, 12, 13.  Plaintiff's

argument is without merit.

The United States has filed its Motion to Dismiss under Rule 12(b)(1) as well as under

Rule 12(b)(6).  Mootness implicates the Court's subject matter jurisdiction and matters outside

the pleadings may be considered on a Rule 12(b)(1) motion.  *McPherson v. Mich. High Sch.*

*Athletic Ass'n., Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (federal court lacks jurisdiction to

adjudicate moot cases); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986)

(matters outside the pleadings may be considered on a Rule 12(b)(1) motion).

Plaintiff's FOIA claim is now moot.  "In general a case becomes moot when the issues

presented are no longer live or the parties lack a legally cognizable interest in the outcome."

*Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (quotations omitted).

An action to compel the production of documents under FOIA is mooted when the agency in

control of the requested documents delivers them to the plaintiff.  *See, e.g., GMRI, Inc. v.*

*E.E.O.C.*, 149 F.3d 449 (6th Cir. 1998) (holding that, once a federal agency turns over

everything in its possession related to a plaintiff's FOIA request, the merits of the plaintiff's

claim for relief, in form of production of information, become moot); *West v. Spellings,* 539 F.Supp.2d 55, 61 (D.D.C. 2008) (Count I of the complaint dismissed as moot because the agency released the records requested).   Once the agency establishes that all responsive records have been released to the requester, the claim becomes moot, as there is no justiciable case or controversy, and it is proper for the court to dismiss the claim for want of subject matter jurisdiction.  *Voinche v. F.B.I.,* 999 F.2d 962, 963 (5th Cir. 1993) (holding that plaintiff's "claim was rendered moot by the FBI's response to his request."); *see also Lovell v. Alderete,* 630 F.2d 428, 430-31 (5th Cir. 1980).  In a case such as this, where the defendant provides evidence that it has fully responded to the FOIA request, the plaintiff carries the burden of proving by a preponderance of the evidence that the trial court has subject matter jurisdiction.  *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).

Although the production of the requested information was piecemeal, Plaintiff does not deny that he now has all of the information that he sought.  Because Plaintiff has failed to offer any evidence whatsoever to support his claim that the BOP has failed to produce all responsive documents, he has failed to establish that there is a justiciable case or controversy.  *See Cornucopia Institute v. Dep't of Agriculture,* 560 F.3d 673, 675–77 (7th Cir. 2009) (FOIA declaratory judgment claim was moot because no case or controversy remains after agency has produced requested records).  Accordingly, Plaintiff's FOIA claim should be dismissed for want of subject matter jurisdiction.[16]

---

[16]  Because the Court finds that Plaintiff's FOIA claim should be dismissed as moot, it declines to address the issue whether Plaintiff failed to exhaust his administrative remedies with regard to that claim.

### IV.  CCA Defendants' Motion to Dismiss

CCA Defendants move to dismiss Counts 1 and 4 of Plaintiff's Fourth Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[17]  CCA Defendants also suggest, in a footnote to their Reply Brief, that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against CCA Defendants and dismiss those claims without prejudice.  Doc. 95, p. 6, n. 6.

In his original complaint, Plaintiff asserted claims under 42 U.S.C. § 1983 against CCA Defendants regarding the death of Klinger.  *See* ECF Doc. 1.  It is unclear if Plaintiff's allegations in his First, Second, and Third Amended Complaints were also based on § 1983. However, in his Fourth Amended Complaint, Plaintiff withdrew his federal claims and asserted only state law claims for wrongful death and intentional infliction of emotional distress against CCA Defendants.  ECF Doc. 63.  Further, in his memorandum contra, Plaintiff confirms that he is asserting only state law claims against CCA Defendants.   ECF Doc. 88, p. 1.

Thus, the only claims that would remain in this case after dismissal of the federal claims against the United States are Plaintiff's state law claims against CCA Defendants.[18]  The Sixth Circuit has recognized a general rule disfavoring a district court's exercise of supplemental jurisdiction when federal question claims are dismissed before trial.  *Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987); *see also Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th

---

[17] CCA Defendants assert that Plaintiff's wrongful death claim in Count 1 should be dismissed because a claim for wrongful death based on deliberate indifference to serious medical needs is not cognizable against CCA or Warden Gunja.  Defendants also argue that, to the extent that Plaintiff is asserting a medical malpractice claim in Count 1 regarding the care and treatment that Klinger received at NEOCC, the claim should be dismissed because Plaintiff has failed to file an affidavit of merit as required by Rule 10(D)(2)(a) of the Ohio Rules of Civil Procedure.  Doc. 72, pp. 5-21.  CCA Defendants further argue that Plaintiff's intentional infliction of emotional distress claim in Count 4 should be dismissed because it is time-barred and because Plaintiff has not adequately pled such a claim. Doc. 72, pp. 21-26.

[18] According to the Fourth Amended Complaint, federal jurisdiction is based upon 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 552 *et seq.* (FOIA) and 28 U.S.C. §§ 1346(b), 2671-2680 (FTCA).  ECF Doc. 63, ¶ 4. Plaintiff also states that "[p]endent jurisdiction is based upon the authority of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367" (supplemental jurisdiction).  *Id.* at ¶ 5.

Cir. 1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits.").  Accordingly, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims against CCA Defendants in Counts 1 and 4 and dismiss those claims without prejudice.

## V.  Conclusion and Recommendation

For the foregoing reasons, the undersigned makes the following recommendations:

1.  The Motion to Dismiss filed by Defendant United States of America should be GRANTED (ECF Doc. 71).  Count 2 of Plaintiff's Fourth Amended Complaint should be dismissed with prejudice to the extent it purports to state a constitutional tort claim and without prejudice to the extent it purports to state a claim for medical malpractice.  Count 3 of Plaintiff's Fourth Amended Complaint should be dismissed with prejudice.

2.  The Motion to Dismiss filed by Defendants Corrections Corporation of America, Inc., and Warden Joseph Gunja should be DENIED without prejudice (ECF Doc. 72).

3.  The Court should decline to exercise supplemental jurisdiction over Count 1 and Count 4 of the Fourth Amended Complaint, in which Plaintiff asserts state law claims against Defendants Corrections Corporation of America, Inc. and Warden Joseph Gunja, and should dismiss those claims without prejudice.

Dated: December 13, 2012

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).